The action was brought to recover damages for personal injuries suffered by the respondent on October 16th, 1901, by falling into an excavation dug by the defendant, against a derailing switch there placed. The plaintiff was a station agent of the defendant at Evans, in Jefferson county in this state. He had been in the employ of the defendant some eight or ten years and at the station named for two and a half years. Evans is a small hamlet of about four hundred inhabitants. The plaintiff occupied as his home a plot of land adjacent to the station grounds, leased by him from one Croissant, the owner. Two days before the accident the defendant commenced the construction of a derailing switch on one of its sidings. This work was in charge of the supervisor of tracks and was done by the workmen in his department. In constructing the switch the defendant's workmen went beyond the limits of the defendant's lands and the excavation was made and the switch set up on the premises occupied by the plaintiff. The plaintiff had been in the habit of going from his house to the station building by a path across his own premises to the defendant's land. The excavation and switch were in the line of this path. On the night of the accident, which was dark and rainy, the plaintiff *Page 292 
started about half-past eight o'clock along this path from the door-yard in front of his house to go to the station building. He fell into the excavation, striking upon the switch or switch handle, and received the injuries which are the subject of this suit. The complaint alleged the possession of the premises by the plaintiff, the defendant's trespass thereon and its negligence in leaving the excavation unguarded, and he sought recovery, not for the trespass on the land, but for his personal injuries. He testified that he did not know of the presence of the switch at the point of his injury or the existence of the excavation. On the first trial of the action the complaint was dismissed; the Appellate Division reversed this judgment and granted a new trial. On the second trial the plaintiff recovered and that judgment has been affirmed by the Appellate Division by a divided court.
We think the learned trial judge was right in holding as a matter of law upon the proofs that the location of the switch was upon the plaintiff's premises, the testimony relied on by the defendant to establish the contrary of this proposition being insufficient to raise an issue as to the fact. The encroachment on the plaintiff's land was some three or four feet and presumably the defendant's employees were unaware at the time that they were encroaching on the plaintiff's land. This, however, did not relieve the defendant from the liability for the trespass. Though the workmen testified that the plaintiff saw the construction of the switch and conversed with them about it, making no complaint of the location, this was denied by the plaintiff and his implied acquiescence was, at most, a question of fact for the jury, which has been resolved in his favor. The defendant was liable for the results of its trespass and we assume that if the plaintiff had not borne any relation to the defendant his recovery for personal injuries would be upheld. At the time of the accident, however, the plaintiff was the station master of the defendant. Of course, the fact that he was in its service gave the defendant no right to trespass on his property, but under his employment there were imposed upon him duties concerning this *Page 293 
switch which, if they had been discharged, would have prevented accident to himself or to third parties. Under the rules of the defendant it was the duty of the station agent to "have charge of the business of the company at the station, all property connected therewith, and all persons employed thereat. Keep the station and grounds in proper condition for the comfort and convenience of patrons. * * * They must know all switches and frogs at their stations are in safe condition for use, and that all signals are in proper working order and must take every precaution to insure the safety of trains. Be responsible for the care and display of switch lamps (unless otherwise ordered), and see that they are lighted from sundown to sunrise." Of the effect of these rules the learned judge writing for the majority of the Appellate Division said: "In a general way the station agent was undoubtedly charged with general supervision of the property at and around the station. Under ordinary circumstances, as between him and the defendant, he was undoubtedly charged with the duty of knowing that the switches and signals were in working order around the station. But manifestly the rules upon this subject applied to switches and signals which were in use and operation. Concededly the switch in question was not in safe condition for use while it was being constructed, and we do not think that it can be said, at least as a matter of law, that plaintiff was so charged with the duty of keeping watch of it while it was being put in and before it was completed, that it can be held that he knew all about its condition and the means and details which were being employed to get it into a condition where it could be operated." We agree with this statement so far as it relates to the nature of the duty imposed upon the plaintiff. The construction of the switch was done by a different department of the road and we do not suppose that the station agent was required to supervise that construction or be responsible for negligence or error in its construction. But it was his duty at all times to "keep the station grounds in proper condition for the comfort and convenience of patrons." Therefore, there must have rested upon him *Page 294 
some responsibility, of however general a character, to overlook and familiarize himself with the station grounds, see what was being done there that might endanger safety or security of the patrons, and take some reasonable precautions to obviate the danger. Yet the plaintiff testifies that though this switch was only 125 feet from the station building, and the men employed in putting it in in view from that point, and though the path from the station building to his house (another than the one hitherto mentioned), which he says he used during the work on the switch, passed within a few feet of where the men were working, and he had seen that a number of ties had been brought to the point, he was not aware of the nature or condition of work that then was being done. The switch itself was completed, as I construe the evidence, on the 15th of October, the day before the accident, though it may be there were excavations around it that should have been filled up. On that day a telegram was sent from the superintendent of bridges and maintenance to the trainmaster at Watertown that a "derailing switch, provided with lock, has been put in Lawton siding that connects with our passenger track at Evans." This telegram was sent by mail by the trainmaster to the plaintiff with the instruction indorsed thereon, "note and return." It was received on the 16th by the plaintiff, who acknowledged its receipt and sent it back to the trainmaster. That the purport of this telegram was to notify the plaintiff that a completed switch had been put in is conceded. Assuming, as we must, from the verdict of the jury, that the plaintiff's testimony as to his ignorance of the switch was true, and further assuming that until this time proper supervision of the station grounds might not have given him notice of the existence and location of the switch, what then became his duty? He was required under the rules to see that the switch was in safe condition for use and the signals in proper working order. He was required to furnish a switch lamp and see that the lamp was lighted from sundown to sunrise, though it is claimed a lamp was required to be set only for switches on the main line. *Page 295 
Yet, with this notice from his superior, he took no action whatever. He did not go to the switch to see if it was in working order; he did not provide a lamp for it, nor see that it was set, nor did he give his assistant, the operator, any instructions. On the contrary, the information imparted by the notice seems to have been wholly ignored by the plaintiff. Had the plaintiff inspected the switch, the accident would not have occurred. The learned judge who wrote below said that the rules applied only to switches and signals in use and operation, not in process of construction. Now, as already stated, the switch proper was completed, but assuming that it was not complete, the plaintiff was informed that it was. According to his testimony he was ignorant of its condition. The only way that he could tell whether in fact it was or was not complete or in working order was by going to see. The question as to the completion of the switch is not the controlling one. The real question is as to the plaintiff's duty when he was told the switch was complete, whether in fact it was so or not. Had the plaintiff discharged what seems to us to have been his plain duty to the defendant upon the receipt of the telegram, he would have been apprised of the location and condition of the switch, and the accident to him been avoided. The defendant's motion for a nonsuit should, therefore, have been granted. Of course, the defendant would remain liable for damages caused by its trespass pure and simple, but no recovery is asked therefor in this action.
There was further error committed on the trial. The learned trial court, on the request of the plaintiff and in accordance with the opinion of the Appellate Division on the former appeal, charged the jury: "That neither the telegram received by the plaintiff, his indorsement thereon nor his duty as station agent, called upon him to personally inspect the switch or have personal knowledge that any excavation made in connection with the construction of the same had been filled in or properly guarded." Under the view already expressed, the receipt of the telegram did impose upon him *Page 296 
this duty; at least, the question was one of fact for the jury, not of law for the court.
It has been suggested that the plaintiff may have known of the location of the switch and forgotten it. But the evidence does not warrant such a claim. The plaintiff asserts that he did not at any time know the location of the switch, and there is no pretense that after the receipt of the telegram he examined it. The question, therefore, remains whether in that condition of ignorance it was not his duty, on receipt of the telegram, forthwith to see that the switch was in working order, even though he may not have been required to set a light upon it, because the switch was not on the main line.
The judgment appealed from should be reversed and a new trial granted, costs to abide the event.